**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NETFLIX, INC., NETFLIX STUDIOS, LLC, NETFLIX US, LLC, and NETFLIX WORLDWIDE ENTERTAINMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 26-cv-08898 |

## COMPLAINT

Plaintiffs Netflix, Inc., Netflix Studios, LLC, Netflix US, LLC, and Netflix Worldwide Entertainment, LLC (collectively, "Netflix" or "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.,* and 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois (the "Unauthorized Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and selling Unauthorized Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been and continues to be irreparably damaged through

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Netflix owns and operates a subscription video on-demand streaming service that distributes original and acquired films and television shows from various genres and in multiple languages. Netflix surpassed 300 million subscribers globally in 2024.

5. Netflix's content offerings also include successful films such as KPop Demon Hunters (collectively, the "Netflix Titles").

6. Netflix has a team focused on consumer products and experiences. That team brings Netflix members' favorite titles to life outside of the screen by selling Netflix-branded merchandise and promoting immersive experiences that reflect the themes in the Netflix Titles. Products sold under the Netflix brand and associated with the Netflix Titles include items such as clothing, accessories, drinkware, home decor, toys, and other merchandise (collectively, the "Netflix Products"). Netflix Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and the official netflix.shop webstore.

7. Netflix Products are sold and advertised in connection with Plaintiff's house marks, which have been used in commerce for several years and are registered with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 3,171,517<br>3,299,362<br>4,953,701<br>5,961,936<br>5,978,610<br>6,024,526<br>6,119,304 | NETFLIX |

| | |
|---|---|
| 6,119,305<br>6,119,528<br>6,119,529<br>6,119,530<br>6,169,891<br>6,262,210 | |
| 4,788,783 | NETFLIX |
| 5,272,903<br>7,715,384 | N |

8. KPop Demon Hunters is an animated musical film that follows the K-pop girl group called '*HUNTR/X*' which is comprised of members Rumi, Mira, and Zoey. Along with their K-pop fame, the girls are also demon hunters and use their singing voices to protect against the demons. KPop Demon Hunters is currently the most-watched animated film on Netflix and is also the most popular Netflix film of all time, with more than 200 million views within the first month of its release. The film's soundtrack has similarly garnered mass success as it became the first soundtrack to have four simultaneous Top 10 songs on the Billboard Hot 100. Some of the characters and character names made famous by the KPop Demon Hunters film include:

| HUNTR/X |
| --- |
|  |

| Saja Boys |
| --- |
|  |

| Rumi | Mira |
| --- | --- |
|  |  |
| **Zoey** | **Derpy Tiger** |
|  |  |
| **Jinu** | **Abby Saja** |
|  |  |

9. Copyrighted works associated with the KPop Demon Hunters film are registered with the United States Copyright Office. The registrations include but are not limited to: "KPop Demon Hunters." (Reg. No. PA0002552302), "KPop Demon Hunters Consumer Products Style Guide" (Reg. No. VAu 1-565-820), "KPop Demon Hunters Production Asset Style Guide" (VAu

1-565-832), "KPop Demon Hunters Artist Series Style Guide" (VAu 1-565-842) and "KPop Demon Hunters Digital Asset Toolkit" (VAu 1-565-841). Plaintiff has also registered the following trademarks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
| --- | --- |
| 8,186,601<br>8,186,628<br>8,186,639<br>8,186,688 | KPOP DEMON HUNTERS |

10. True and correct copies of the United States Registration Certificates for the trademarks listed in the tables above (collectively, the "Netflix Trademarks") are attached hereto as **Exhibit 1**.

11. The U.S. registrations for the Netflix Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Netflix Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Netflix Trademarks pursuant to 15 U.S.C. § 1057(b).

12. The Netflix Trademarks are distinctive when applied to the Netflix Products, signifying to the consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards.

13. The Netflix Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the Netflix Products have enabled the Netflix brand to achieve widespread recognition and fame and have made the Netflix Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant

goodwill associated with the Netflix Titles have made the Netflix Trademarks invaluable assets of Plaintiff.

14. Plaintiff has expended substantial time, money and other resources in advertising and promoting the Netflix Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the Netflix Trademarks. Netflix Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Netflix Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Netflix Products have become among the most popular of their kind in the U.S. and the world. The Netflix Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Netflix Trademarks is of incalculable and inestimable value to Plaintiff.

15. True and correct copies of the United States Registration Certificates for the copyrighted works listed above (collectively, the "Netflix Copyrighted Works") are attached hereto as **Exhibit 2**.

16. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Netflix Copyrighted Works to the public.

17. Since first publication, the Netflix Copyrighted Works have been used on the Netflix Products and are currently featured on Plaintiff's website at netflix.com. Netflix Products featuring the Netflix Copyrighted Works are advertised on Plaintiff's webstore at netflix.shop.

**The Defendants**

18. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20. The success of Plaintiff's brand has resulted in significant infringment of the Netflix Trademarks and Netflix Copyrighted Works. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and

Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

21. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

22. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S.

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.*; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] *Id.* at 22.

[6] *Id.* at 39.

[7] Chow, *supra* note 4, at 186-87.

consumers, and have sold Unauthorized Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 3**.

23. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of its Netflix Trademarks or copy or redistribute the Netflix Copyrighted Works, and none of the Defendants are authorized retailers of genuine Netflix Products.

24. Many Defendants also deceive unknowing consumers by using the Netflix Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Netflix Products. Other e-commerce stores operating under the Seller Aliases omit using Netflix Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Netflix Products.

25. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

28. E-commerce store operators like Defendants communicate with each other in chat rooms and through websites regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

30. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Netflix Trademarks and/or copies of the Netflix Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

31. Defendants' unauthorized use of the Netflix Trademarks and/or copies of the Netflix Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. Defendants have committed trademark infringement through their unauthorized use in commerce of counterfeit imitations of the federally registered Netflix Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Netflix Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Netflix Products offered, sold, or marketed under the Netflix Trademarks.

34. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Netflix Trademarks without Plaintiff's permission.

35. Plaintiff is the exclusive owner of the Netflix Trademarks. The United States Registrations for the Netflix Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Netflix Trademarks and are willfully infringing and intentionally using counterfeits of the Netflix Trademarks. Defendants' willful, intentional, and unauthorized use of the Netflix Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

36. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Netflix Trademarks.

38. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

41. By using the Netflix Trademarks on the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

42. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

44. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45. The Netflix Copyrighted Works constitute original works and copyrightable subject matters pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

46. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Netflix Copyrighted Works. The Netflix Copyrighted Works are protected by the U.S. Copyright Registration Nos. PA0002552302, VAu 1-565-820, VAu 1-565-832, VAu 1-565-842, and VAu 1-565-841, which were duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Netflix Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

47. The Netflix Copyrighted Works is published on the internet and available to Defendants online. As such, Defendants had access to the Netflix Copyrighted Works via the internet.

48. Without authorization from Plaintiff or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Netflix Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Netflix Copyrighted Works. Such conduct infringes and continues to infringe the Netflix Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)-(3), (5).

49. Defendants reap the benefits of the unauthorized copying and distribution of the Netflix Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

50. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Netflix Copyrighted Works.

51. On information and belief, Defendants' infringement has been willful, intentional, purposeful, in disregard of, and with indifference to Plaintiff's rights.

52. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

53. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Netflix Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Netflix Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Netflix Product or is not authorized by Plaintiff to be sold in connection with the Netflix Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Netflix Copyrighted Works in any manner without the express authorization of Plaintiff;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Netflix Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Netflix Trademarks and/or the Netflix Copyrighted Works;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   e. further infringing the Netflix Trademarks and/or the Netflix Copyrighted Works, and damaging Plaintiff's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Netflix Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Netflix Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, TikTok, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Netflix Trademarks and/or which bear the Netflix Copyrighted Works;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Netflix Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Netflix Trademarks;

5) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a);

6) As a direct and proximate result of Defendants' infringement of the Netflix Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

7) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

8) That Plaintiff be awarded its reasonable attorneys' fees and costs for bringing this action pursuant to 17 U.S.C. § 505; and

9) Award any and all other relief that this Court deems just and proper.

Dated this 27th day of July 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiffs Netflix, Inc., Netflix Studios, LLC, Netflix US, LLC, and Netflix Worldwide Entertainment, LLC*